THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| ROBERT TODD BENSON, on behalf of himself, and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX, INC.,<br><br>Defendant. | Case No.:  3:17-cv-564-GNS<br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Robert Todd Benson, individually and on behalf of a class of persons similarly situated (the "Class" or "Class Members"), brings this class action against Defendant Equifax ("EQUIFAX") seeking equitable relief and damages as set forth below.

### PRELIMINARY STATEMENT

1. Because it failed to adequately safeguard Plaintiff's and the Class Members' personal information, EQUIFAX was recently hacked by cyber criminals. The breach occurred between mid-May and July 2017 (the "Breach").[1] EQUIFAX has stated that it discovered the hack on July 29, 2017.[2] As many as 143 million Americans' personal information has been compromised as a direct result of EQUIFAX's failures to properly safeguard this valuable information.[3]

---

[1] Sara Ashley O'Brien, *Giant Equifax data breach: 143 million people could be affected*, http://money.cnn.com/2017/09/07/technology/business/equifax-data-breach/index.html (last accessed September 8, 2017).

[2] *Id.*

[3] *Id.*

2. Plaintiff is a customer harmed by EQUIFAX's substandard security practices which led to the Breach. Plaintiff seeks to represent himself as well as a class of all other customers similarly situated whose Personal information has been compromised by the Breach (the "Class").

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for deprivation of rights guaranteed under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* Jurisdiction is also founded upon 28 U.S.C. § 1332(d) (Class Action Fairness Act) in that this is a putative class action with more than 100 class members, more than $5 million in controversy, and the requisite diversity of citizenship.

4. Venue is appropriate pursuant to 28 U.S.C. § 1391. A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this District.

5. This court has personal jurisdiction over Defendant because they have substantial and continuous contacts with this forum and the events giving rise to this matter arose out of those contacts.

## PARTIES

6. Plaintiff Robert Todd Benson ("Benson") is a citizen and resident of Louisville, Kentucky.

7. Defendant EQUIFAX is a Georgia corporation with its principal offices located at 1550 Peachtree Street NE, Atlanta, Georgia 30309. EQUIFAX "is a global information solutions company…[that] assimilates and analyzes data on more than 820 million consumers and more

than 91 million businesses worldwide, and its database includes employee data contributed from more than 7,100 employers."[4]

## STATEMENT OF COMMON FACTS

8. On or about September 7, 2017, Plaintiff became aware through news reports that EQUIFAX's substandard security practices caused a massive data breach compromising the Personal Information of nearly half of all Americans.

9. The hacker acquired the records of approximately 143 million people.

10. These records include personally identifiable information ("PII" or "Confidential Information") such as names, addresses and birthdates, Social Security numbers and ID numbers (such as driver's licenses or passport numbers). EQUIFAX has determined that its encryption may have been compromised.

11. As a direct and proximate result of Defendant's actions and omissions in disclosing and failing to protect Plaintiff's private personal information, Plaintiff and those similarly situated have suffered harm and have been placed at a substantial risk of harm in the form of identity theft and have incurred and will incur actual damages in an attempt to prevent and mitigate identity theft. They have suffered or are at increased risk of suffering from:

- the loss of the opportunity to control how their PII is used;
- the diminution in the value and/or use of their PII entrusted to Defendant with the understanding that Defendant and its employees/managers would safeguard their PII against theft and not allow access and misuse of their PII by others;
- the compromise, publication and/or theft of their PII;

---

[4] http://www.equifax.com/about-equifax/company-profile (last accessed Septemebr 8, 2017).

- out-of-pocket costs associated with the prevention and detection of, and recovery from, identity theft and/or unauthorized use of financial and medical accounts;

- lost opportunity costs associated with the effort expended on and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the data breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from identity data misuse;

- costs associated with the inability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets;

- unauthorized use of compromised PII to, among other things, open new financial accounts;

- the continued risk to their PII, which remains in the Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the PII in their possession;

- current and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the data breach for the remainder of the lives of the Class Members and their families/spouses/dependents.

## CLASS ALLEGATIONS

12. Plaintiff brings this complaint on behalf of himself and the following Class:

   **All persons whose personally identifiable information was discovered by EQUIFAX on or about July 29, 2017 to have been compromised**.

13. The Class and definition specifically excludes: (a) any persons or other entity currently related to or affiliated with Defendant; (b) any Judge presiding over this action and members of his or her family; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

14. *Numerosity*: The members of the putative Class, estimated at 143 million, are so numerous that joinder of individual claims is impracticable. Members of the Class can be readily identified through EQUIFAX's records.

15. *Commonality*: There are significant questions of fact and law common to the members of the Class. These issues include:

    a. Whether EQUIFAX failed to establish appropriate administrative, technical and physical safeguards to ensure the security and confidentiality of records to protect against known and anticipated threats to security;

    b. Whether the security provided by EQUIFAX was satisfactory to protect customer information as compared to industry standards;

    c. Whether EQUIFAX misrepresented or failed to provide adequate information to customers regarding the type of security practices used;

    d. Whether EQUIFAX's conduct was intentional, willful or negligent;

    e. Whether EQUIFAX violated any and all statutes and/or common law listed herein;

    f. Whether the putative Class suffered damages as a result of EQUIFAX's conduct or omissions; and

    g. Whether Class Members are entitled to injunctive, declarative and monetary relief as a result of EQUIFAX's conduct.

16. *Typicality*: Plaintiff's claims are typical of the claims of the putative Class. Plaintiff and all members of the putative Class have been adversely affected and damaged in that EQUIFAX failed to adequately protect their private information to the detriment of Plaintiff and the putative Class.

17. *Adequacy of Representation*: The proposed Class Representative will fairly and adequately represent the putative Class because he has the Class Members' interest in mind, his individual claims are co-extensive with those of the Class, and because he is represented by qualified counsel experienced in litigation.

18. *Superiority*: A class action in this instance is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the putative Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning EQUIFAX's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale and comprehensive supervision over the entire controversy by a single judge in a single court.

19. The putative Class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Equifax has acted on grounds generally applicable to the putative Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the Class.

20. The putative Class may be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to Class Members will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

## COUNT I
### *Negligence*

21. Plaintiff repeats and reaffirms the assertions of fact contained in the forgoing paragraphs as though fully set forth herein.

22. Equifax owed a duty to Plaintiff and all Class Members to use security practices that would protect their Confidential Information provided to Equifax against the very sort of attack that occurred here.

23. EQUIFAX breached the aforementioned duty when it failed to use security practices that would protect the Confidential Information provided to it by consumers.

24. The law also imposes an affirmative duty on Defendant to timely disclose the theft of the PII so that Class Members can be vigilant in attempting to determine if any of their accounts or assets have been stolen through identity theft.

25. Through their failure to provide timely and clear notification of the data breach to consumers, Defendant negligently prevented Class Members from taking meaningful, proactive steps to investigate possible identity theft.

26. As a direct and proximate cause of failing to use appropriate security practices, EQUIFAX's system was hacked causing Plaintiff's and all Class Members' PII to be disseminated to unauthorized individuals.

27. The breach of the security system caused direct and substantial damages to Plaintiff and Class Members, as well as the possibility of future harm through the dissemination of private information and possibility of identity theft.

28. By engaging in the forgoing acts and omissions, EQUIFAX committed the common law tort of negligence. For all the reasons stated above, Defendant's conduct was negligent and departed from reasonable standards of care including, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; failing to provide adequate and appropriate supervision of persons having access to Class Members' PII; and failing to provide Class Members with timely and sufficient notice that their sensitive PII had been compromised.

29. Neither Plaintiff nor the other Class Members contributed to the data breach or subsequent misuse of their PII as described in this Complaint.

30. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and every member of the Class has been put at risk of identity theft and has an obligation to mitigate damages through credit monitoring services. Defendant is liable to each and every member of the Class for the reasonable costs of future credit monitoring services for a reasonable period of time, substantially in excess of one year. Defendant is also liable to those Class Members who have directly sustained damages as a result of their identity theft or unauthorized use of their Confidential Information.

## COUNT II
*WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT*
**15 U.S.C. § 1681, et seq.**

31. Plaintiff repeats and reaffirms the assertions of fact contained in the foregoing paragraphs as fully set forth herein.

32. Pursuant to 15 U.S.C. § 1681a(f), a "consumer reporting agency" includes any person which, for monetary fees or on a cooperative nonprofit basis, regularly engages, in whole or in part, in the practice of assembling or evaluating consumer credit information or other consumer information for the purpose of furnishing "consumer reports" to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

33. Pursuant to 15 U.S.C. § 1681a(d)(1), a "consumer report" is any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, which is used, expected to be used, or collected, in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for (i) credit or insurance to be used primarily for personal, family, or household purposes, (ii) employment purposes, or (iii) any other purpose authorized by 15 U.S.C. § 1681b.

34. "Consumer credit information" includes, *inter alia*, a person's name, identification number (*e.g.*, Social Security number), marital status, physical address and contact information, educational background, employment, professional or business history, financial accounts and financial account history (*i.e.*, details of the management of the accounts), credit report inquiries (*i.e.*, whenever consumer credit information is requested from a credit reporting agency), judgments, administration orders, defaults, and other notices.

35. FCRA limits the dissemination of "consumer credit information" to certain well-defined circumstances and no others. 15 U.S.C. § 1681b(a).

36. As individuals, Plaintiff and Class Members are consumers entitled to the protections of the FCRA. 15 U.S.C. § 1681a(c).

37. At all relevant times, EQUIFAX was (and continues to be) a consumer reporting agency under FCRA because on a cooperative nonprofit basis and for monetary fees, it regularly (i) received, assembled and/or evaluated Plaintiff's and Class Members' "consumer credit information" protected by FCRA for the purpose of furnishing consumer reports to third parties, and (ii) used the means and facilities of interstate commerce to prepare, furnish and transmit consumer reports containing Plaintiff's and Class Members' consumer credit information to third parties (and continues to do so).

38. As a consumer reporting agency, Defendant was (and continues to be) required to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard, protect and limit the dissemination of consumer credit information in its possession, custody and control, including Plaintiff's and Class Members' consumer credit information, only for permissible purposes under FCRA. *See* 15 U.S.C. § 1681(b).

39. By its above-described wrongful actions, inaction and omissions, want of ordinary care, and the resulting security breach, Defendant willfully and recklessly violated 15 U.S.C. § 1681(b), 15 U.S.C. § 1681a(d)(3), 15 U.S.C. § 1681b(a),(g), and 15 U.S.C. § 1681c(a)(6) (and the related applicable regulations) by failing to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and Class Members' consumer credit information.

40. Defendant's above-described wrongful actions, inaction and omissions, and want of ordinary care, in turn, directly and proximately caused the security breach which, in turn, directly and proximately resulted in the wrongful dissemination of Plaintiff's and Class Members' consumer credit information into the public domain for no permissible purpose under

FCRA. Defendant's above described willful and reckless FCRA violations also have prevented it from timely and immediately notifying Plaintiff and Class Members about the security breach which, in turn, inflicted additional economic damages and other actual injury and harm on Plaintiff and Class Members.

41. Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care, and the resulting security breach, directly and proximately caused Plaintiff and Class Members to suffer economic damages and other actual injury and harm, and collectively constitute the willful and reckless violation of FCRA. Had Defendant not engaged in such wrongful actions, inaction, omissions, and want of ordinary care, Plaintiff's and Class Members' consumer credit information would not have been disseminated to the world for no permissible purpose under FCRA, and used to commit identity fraud. Plaintiff and Class Members, therefore, are entitled to declaratory relief (as set forth below), injunctive relief (as set forth below), and compensation for their economic damages, and other actual injury and harm in the form of, *inter alia,* (i) the lost intrinsic value of their privacy, (ii) deprivation of the value of their consumer credit information, for which there is a well-established national and international market, (iii) the financial and temporal cost of monitoring their credit and financial accounts, and mitigating their damages, and (iv) statutory damages of not less than $100, and not more than $1000, each, under 15 U.S.C. § 1681n(a)(1).

42. Plaintiff and Class Members also are entitled to recover punitive damages, under 15 U.S.C. § 1681n(a)(2), and their attorneys' fees, litigation expenses, and costs, under 15 U.S.C. § 1681n(a)(3).

## COUNT III
### *NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT*
### 15 U.S.C. § 1681, et seq.

43. Plaintiff repeats and reaffirms the assertions of fact contained in the foregoing paragraphs as though fully set forth herein.

44. In the alternative, by its above-described wrongful actions, inaction and omissions, want of ordinary care, and the resulting security breach, Defendant negligently or in a grossly negligent manner violated 15 U.S.C. § 1681(b), 15 U.S.C. § 1681a(d)(3), 15 U.S.C. § 1681b(a),(g), and 15 U.S.C. § 1681c(a)(6) (and the related applicable regulations) by failing to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and Class Members' consumer credit information.

45. Defendant's above-described wrongful actions, inaction and omissions, and want of ordinary care, in turn, directly and/or proximately caused the security breach which, in turn, directly and proximately resulted in the wrongful dissemination of Plaintiff's and Class Members' consumer credit information into the public domain for no permissible purpose under FCRA. Defendant's above-described willful and reckless FCRA violations also have prevented it from timely and immediately notifying Plaintiff and class members about the security breach which, in turn, inflicted additional economic damages and other actual injury and harm on Plaintiff and class members.

46. It was reasonably foreseeable to Defendant that its failure to identify, implement, maintain and monitor the proper data security measures, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and Class Members' consumer credit information would result in a security lapse, whereby unauthorized third parties

would gain access to, and disseminate, Plaintiff's and Class Members' consumer credit information into the public domain for no permissible purpose under FCRA. Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care, and the resulting security breach, directly and proximately caused Plaintiff and Class Members to suffer economic damages and other actual injury and harm, and collectively constitute the negligent violation of FCRA. Had Defendant not engaged in such wrongful actions, inaction, omissions, and want of ordinary care, Plaintiff's and Class Members' consumer credit information would not have been disseminated to the world for no permissible purpose under FCRA, and used to commit identity fraud. Plaintiff and Class Members, therefore, are entitled to declaratory relief (as set forth below), injunctive relief (as set forth below), and compensation for their economic damages, and other actual injury and harm in the form of, *inter alia,* (i) the lost intrinsic value of their privacy, (ii) deprivation of the value of their consumer credit information, for which there is a well-established national and international market, and (iii) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

47. Plaintiff and Class Members also are entitled to recover their attorneys' fees, litigation expenses, and costs, under 15 U.S.C. § 1681o(a)(2).

## COUNT IV

### *INVASION OF PRIVACY*

48. Plaintiff and the Class incorporate by reference each preceding paragraph as though fully set forth at length herein.

49. EQUIFAX invaded Plaintiff's and the Class Members' right to privacy by allowing the unauthorized access to Plaintiff's and Class Members' PII and by negligently maintaining the confidentiality of Plaintiff's and Class Members' PII, as set forth above.

50. The intrusion was offensive and objectionable to Plaintiff, the Class Members, and to a reasonable person of ordinary sensibilities in that Plaintiff's and Class Members' PII was disclosed without prior written authorization of Plaintiff and the Class.

51. The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiff's and the Class Members' provided and disclosed their PII to EQUIFAX privately with an intention that the PII would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class Members were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

52. As a proximate result of Defendant's above acts, Plaintiff's and the Class Members' PII was viewed, printed, distributed, and used by persons without prior written authorization and Plaintiff and the Class Members suffered damages.

53. Defendant is guilty of oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiff's and the Class Members' personal information with a willful and conscious disregard of Plaintiff's and the Class Members' right to privacy.

54. Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause Plaintiff and the Class Members great and irreparable injury in that the PII maintained by Defendant can be viewed, printed, distributed, and used by unauthorized persons. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiff and the Class.

## COUNT V
### *DECLARATORY RELIEF*

55. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*.; Fed. R. Civ. P. 57, Plaintiff and Class Members request the Court to enter a judgment declaring, *inter alia*, (i) Defendant owed (and continues to owe) a legal duty to safeguard and protect Plaintiff's and class members' confidential and sensitive consumer credit information, and timely notify them about any security breach, (ii) Defendant breached (and continues to breach) such legal duties by failing to safeguard and protect Plaintiff's and Class Members' confidential and sensitive payment consumer credit information, and (iii) Defendant's breach of its legal duties directly and proximately caused the security breach, and the resulting damages, injury, and harm suffered by Plaintiff and class members.

## COUNT VI
### *INJUNCTIVE RELIEF*

56. Defendant EQUIFAX's above-described wrongful actions, inaction, omissions, want of ordinary care, nondisclosures, and the resulting security breach have caused (and will continues to cause) Plaintiff and Class Members to suffer irreparable harm in the form of, *inter alia*, economic damages and other injury and actual harm in the form of, *inter alia,* (i) actual identity theft and identity fraud, (ii) invasion of privacy, (iii) loss of the intrinsic value of their privacy, (iv) breach of the confidentiality of their consumer reports and consumer credit information, (v) deprivation of the value of their consumer credit information, for which there is a well-established national and international market, (vi) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages, and (vii) the imminent, immediate, and continuing increased risk of ongoing identity theft and identity fraud. Such irreparable harm will not cease unless and until enjoined by this Court.

57. Plaintiff and Class Members, therefore, are entitled to injunctive relief and other appropriate affirmative relief including, *inter alia*, an order compelling Defendant EQUIFAX to, *inter alia*, (i) notify each person whose consumer credit information was exposed in the security breach, (ii) provide credit monitoring to each such person for at least six years, (iii) establish a fund (in an amount to be determined) to which such persons may apply for reimbursement of the time and out-of-pocket expenses they incurred to remediate identity theft and/or identity fraud (*i.e.*, data breach insurance), from May 1, 2017, forward to the date the above-referenced credit monitoring terminates, and (iv) discontinue its above-described wrongful actions, inaction, omissions, want of ordinary care, nondisclosures, and the resulting security breach.

58. Plaintiff and Class Members also are entitled to injunctive relief requiring Defendant EQUIFAX to implement and maintain data security measures, policies, procedures, controls, protocols, and software and hardware systems, including, *inter alia*, (i) engaging third-party security auditors/penetration testers and internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's computer systems on a periodic basis, (ii) engaging third-party security auditors and internal personnel to run automated security monitoring, (iii) auditing, testing, and training its security personnel regarding any new or modified procedures, (iv) conducting regular database scanning and security checks, (v) regularly evaluating web applications for vulnerabilities to prevent web application threats, and (vi) periodically conducting internal training and education to inform internal data security personnel how to identify and contain data security lapses.

59. If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury in the event Defendant EQUIFAX commits another security lapse, the risk of which is real, immediate, and substantial.

60. The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if Defendant EQUIFAX suffers another massive security lapse, Plaintiff and Class Members will likely again incur millions of dollars in damages. On the other hand, and setting aside the fact that Defendant has a pre-existing legal obligation to employ adequate customer data security measures, Defendant EQUIFAX's cost to comply with the above-described injunction they are already required to implement is relatively minimal.

61. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another security lapse, thereby eliminating the damages, injury, and harm that would be suffered by Plaintiff, Class Members, and the millions of consumers whose confidential and sensitive consumer credit information would be compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, for himself and Class Members, respectfully request that (i) this action be certified as a class action, (ii) Plaintiff be designated the Class Representative, and (iii) Plaintiff's counsel be appointed as Class Counsel. Plaintiff, for himself and Class Members, further requests that upon final trial or hearing, judgment be awarded against Defendant, in Plaintiff's favor for:

(i) statutory and actual damages under the Fair Credit Reporting Act in an amount to be determined by the trier of fact;

(ii) compensatory and punitive damages in an amount to be determined by the trier of fact;

(iii) declaratory and injunctive relief (as set forth above);

    (iv) attorneys' fees, litigation expenses and costs of suit incurred through the trial and any appeals of this case;

    (v) pre- and post-judgment interest on any amounts awarded; and

    (vi) such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of Class Members, respectfully demands a trial by jury on all of his claims and causes of action so triable.

Dated: September 15, 2017   By: V. Brandon McGrath
             V. Brandon McGrath (KBA # 89337)
             Bingham Greenebaum Doll LLP
             2350 First Financial Center
             255 East Fifth Street
             Cincinnati, OH 45202-4728
             (513) 455-7641
             (513) 762-7641 (fax)
             bmcgrath@bgdlegal.com

             Jason T. Ams
             Bingham Greenebaum Doll LLP
             300 West Vine Street, Suite 1200
             Lexington, KY 40507-1665
             (859) 231-4679
             (859) 255-2742 (fax)
             jams@bgdlegal.com

             Brett H. Oppenheimer
             222 E. Witherspoon Street, Suite 401
             Louisville, KY 40202
             (502) 242-8877
             brett@bluegrassinjury.com

             *Attorneys for Plaintiff*